UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
OLYMPUS DAIRY USA CORP.,

        Plaintiff,

  -against-                              MEMORANDUM
                                                      AND ORDER

PAVIL ASSOCIATES, INC.,                      12 CV 1897 (RML)

        Defendant.
------------------------------------------------------------------X
PAVIL ASSOCIATES, INC.,

        Third-Party Plaintiff,

  -against-

FLAGSHIP LOGISTICS GROUP f/k/a
SATARIA 3PL and SATARIA GROUP, INC.,

        Third-Party Defendants.
------------------------------------------------------------------X
FLAGSHIP LOGISTICS GROUP f/k/a
SATARIA 3PL and SATARIA GROUP, INC.,

        Second Third-Party Plaintiffs,

  -against-

NORTH CARRIBBEAN TRANSPORT, INC.,
and SUNLINE LOGISTICS, INC.,

        Second Third-Party Defendants.
------------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        This case is before me on consent of all parties, pursuant to 28 U.S.C. § 636.

Third-party defendants Flagship Logistics Group f/k/a Sataria 3PL and Sataria Group, Inc.

(collectively, "Sataria") now move for summary judgment, purusant to FED. R. CIV. P. 56(c).

For the reasons stated below, Sataria's motion is granted.

**BACKGROUND AND UNDISPUTED FACTS**[1]

Plaintiff Olympus Dairy USA Corp. ("Olympus") initiated this action against defendant Pavil Associates, Inc. ("Pavil) in April 2012, alleging breach of contract and negligence relating to a shipment of cheese. (See Complaint, dated Apr. 17, 2012; Amended Complaint, dated Feb. 14, 2013 ("Am. Compl.").) Olympus, a New Jersey corporation, is the United States subsidiary of Group Tyras, S.A., a Greek corporation that produces and exports dairy products. (Am. Compl. ¶¶ 4-5.) Pavil is a freight broker, with its principal place of business in Astoria, Queens. (Id. ¶ 6.)

In January 2011, Olympus contracted with Pavil to ship approximately 4,050 cases of cheese from Piraeus, Greece to a warehouse in Chatsworth, California, for delivery to two customers. (Id. ¶¶ 12-17.) Pavil shipped the cheese to a refrigerated warehouse in Port Newark, New Jersey and then contracted with Sataria, a Delaware shipping company based in Indiana, to transport the cheese by refrigerated truck to California. (Id. ¶¶ 20-21.) Sataria then subcontracted the transport to Sunline Logistics, LLC ("Sunline"), a Nevada corporation based in New Jersey, which picked up the shipment in New Jersey and delivered it to the purchasers in

---

[1] The following facts, upon which plaintiff's complaint is based, are undisputed or deemed admitted, unless otherwise noted. Sataria has served and filed a Statement of Material Facts, in compliance with Local Civil Rule 56.1(a). The rule states that upon any motion for summary judgment, "there shall be annexed to the notice of motion a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Rule 56.1(b) then requires any party opposing summary judgment to include "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Under Rule 56.1(c), all "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless specifically controverted by . . . the statement required to be served by the opposing party." See AAI Recoveries, Inc. v. Pijuan, 13 F. Supp. 2d 448, 449–50 (S.D.N.Y. 1998); Montalvo v. Sun Roc Corp., 179 F.R.D. 420, 421–23 (S.D.N.Y. 1998); see also T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009). As explained below, no party has opposed Sataria's motion.

California.  (Id. ¶¶ 24-27.)

According to the complaint, when the shipment arrived in California, an inspection revealed that the cheese had frozen during transport.  (Id. ¶ 28.)  Olympus alleges that the cheese froze because the truck's refrigeration unit had been set at a temperature of ten degrees, instead of thirty-six degrees, as directed in Pavil's order tickets to Sataria and the Load and Rate Confirmation Sheet that Sataria had issued to Sunline.[2]  (Id. ¶¶ 23, 26, 28-29.)  Because the cheese was "unfit for consumption," the purchasers rejected the orders.  (Id. ¶ 29.)

Olympus sued Pavil for $103,648.85.  (Id. ¶ 30.)  Pavil then brought a third-party complaint against Sataria (see Third-Party Complaint, dated July 17, 2012), which counter-sued to recover $12,525.60 in past-due freight charges from Pavil and brought a second third-party complaint against Sunline (see Third-Party Complaint, dated Aug. 28, 2012).  In addition, Olympus amended its complaint to assert claims against Sataria and Sunline[3] directly.  (See Am. Compl.)  Sataria now moves for summary judgment against both Olympus and Pavil, neither of which opposes the motion,[4] on the ground that it is a "broker" and therefore cannot be held liable pursuant to the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. §

---

[2] Although the Load and Rate Confirmation Sheet mistakenly described the goods as "chilled yogurt," it also directed that the shipment be transported at a temperature of "36F."  (See Affidavit of Barry N. Gutterman, Esq., sworn to July 31, 2013 ("Gutterman Aff."), Ex. C.)

[3] According to the Broker Carrier Agreement between Sataria and Sunline, Sunline was required to purchase and maintain $100,000 in liability insurance to cover any loss or damage to the shipment, in compliance with federal law.  (See Gutterman Aff., Ex. I at 2, ¶ 7.)  At a conference before me on March 29, 2013, the parties reported that Sunline, which never answered the third-party complaint, had been liquidated in a Chapter 7 Bankruptcy proceeding.  (See Order, dated Mar. 29, 2013.)

[4] Pavil did not respond to the motion in any way.  Counsel for Olympus wrote a letter to the court stating that Olympus "will not be submitting any papers in opposition" to Sataria's motion.  (See Letter of Laurence J. Lebowitz, Esq., dated Sept. 9, 2013.)

14706(d).

## DISCUSSION

A. Summary Judgment Standard

A court shall grant summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and decide only whether there is any genuine issue to be tried. Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir. 1988). "[T]he court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact . . . . Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) (internal citations omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

B. The Carmack Amendment

The Carmack Amendment to the Interstate Commerce Act of 1887 governs the liability of motor carriers for loss or damage to goods transported in interstate commerce. See 49 U.S.C. § 14706(d). "In enacting it, Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability." Project Hope v. M/V IBN SINA, 250 F. 3d 67, 73 n. 6 (2d Cir. 2001) (citing Morris v. Covan World Wide Moving, Inc., 144 F. 3d 377, 381 (5th Cir. 1998); Shao v. Link Cargo

(Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993)). Congress also intended, however, to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Reider v. Thompson, 339 U.S. 113, 119 (1950). Accordingly, the Carmack Amendment gives a shipper the "right to proceed against the initial carrier in a case where damage or loss occurred while the shipment was in the hands of a subsequent carrier." Aaacon Auto Transp., Inc. v. State Farm Mut. Auto. Ins. Co., 537 F.2d 648, 653 (2d Cir. 1976). In other words, "[t]he Carmack Amendment establishes a single uniform regime for recovery by shippers 'directly from [the] interstate common carrier in whose care their [items] are damaged,' and . . . 'preempt[s][the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment.'" Project Hope, 250 F. 3d at 73 n.6 (quoting Windows, Inc. v. Jordan Panel Sys. Corp., 177 F. 3d 114, 117–18 (2d Cir. 1999)).

The "Carmack amendment imposes liability on 'carriers'[and freight forwarders] but not on 'brokers,' as those terms are defined by the statute," and thus "it is critical to determine whether a defendant was acting as a carrier [or freight forwarder,] or as a broker[,] in relation to the particular shipment that was damaged." Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc., No. 09 CV 2365, 2011 WL 671747, at *3 (S.D.N.Y. Feb. 18, 2011) (brackets in original) (quoting AIOI Ins. Co. v. Timely Integrated, Inc., No. 08 CV 1479, 2009 WL 2474072, at *2 (S.D.N.Y. Aug. 12, 2009)); see also Commercial Union Ins. Co. v. Forward Air, Inc., 50 F. Supp. 2d 255, 257 (S.D.N.Y. 1999) ("The Carmack Amendment does not provide for the liability of brokers."). Under the statute, a "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing,

or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

"The difference between a carrier and a broker is often blurry," Nebraska Turkey Growers Coop. Ass'n v. ATS Logistics Servs., Inc., No. 4:05 CV 3060, 2005 WL 3118008, at *4 (D. Neb. Nov. 22, 2005), and the carrier/broker inquiry is often considered ill-suited to summary judgment. See Nipponkoa Ins. Co., 2011 WL 671747, at *5 ("Courts frequently conclude that there are issues of fact as to whether an entity is a carrier for purposes of the Carmack Amendment.") (citing cases). In the instant case, however, there is no issue of fact as to Sataria's status. Sataria has stated that it is a licensed property broker and that it never took possession of the goods for shipment. (See Rule 56.1 Statement of Material Facts, dated Aug. 1, 2013, ¶¶ 9, 11, 24, 26.) Neither Olympus nor Pavil has attempted to refute Sataria's assertion that it was a broker and not a motor carrier or freight forwarder.

## CONCLUSION

Because there are no disputed issues of material fact, Sataria's motion for summary judgment is granted.

SO ORDERED.

Dated: Brooklyn, New York
      December 6, 2013

                                             /s/
                                     ROBERT M. LEVY
                                     United States Magistrate Judge